## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| NICHOLAS APPERSON, | ) | |
| *on behalf themselves and others* | ) | |
| *similarly situated,* | ) | |
| | ) | |
| Plaintiff, | ) | Case No.  17-cv-2461 |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF ST. LOUIS, | ) | Class Action // Jury Demanded |
| | ) | |
| Defendant. | ) | |

## CLASS ACTION COMPLAINT

### Introduction

1.      This civil rights action is brought in the shadow of the troubling September 15, 2017, not guilty verdict in the case of the *State of Missouri v. Jason Stockley*, where a white St. Louis Metropolitan Police Officer was acquitted of murder after gunning down Anthony Lamar Smith, an African-American community member.  Peaceful protesters declaring Black Lives Matter and individuals seeking greater police accountability have taken to the streets to have their voices heard.  In response, the City has again demonstrated its commitment to unconstitutional practices by unlawfully cracking down on such individuals, who have been subject to unlawful arrest, bail, and prosecution practices.

2.      This suit seeks to reform the City of St. Louis's overlapping and interlocking system of wide-spread unconstitutional practices that result in unlawful physical restraint and arrest of community members based on: (1) accusations of mere civil disobedience, (2) payment of arbitrarily-set monetary sums to reclaim their freedom prior to trial, (3) exploitation of unconstitutionally vague and overbroad ordinances to file charges, and (4) unavoidable conflicts

of interest relating to the monies raised for actors of the Municipal Court system, which taints any citizen's ability to receive unbiased review of their charges.

**Nature of the Action**

3.     Historically, it is the policy and practice of the City of St. Louis to arrest demonstrators and activists who call for police accountability, rather than merely cite and release. Moreover, despite First Amendment protections of free expression, the City of St. Louis arrests demonstrators and activists later to be charged under outdated and unconstitutional local municipal ordinances, which are civil, rather than criminal, in nature.

4.     Following arrest for protected activity, the City places demonstrators and activists in holding cells and other locations throughout the city, only to be released upon payment of unsecured cash bonds. This ignores Missouri's presumption of release on personal recognizance, or any consideration of the individual facts and circumstances of the individual protestor – such as deep community ties, likelihood to return for trial, or lack of danger to the community – resulting in imposition of unlawful and unconstitutionally excessive bail.

5.     Further perpetuating the violation of individual rights, historically such individuals have been prosecuted by the City Counselor's Office under a "no drop" prosecution policy against protestors and "cop watchers," regardless of whether the charges against protesters are supported or sufficient as a matter of law.  The City Counselor's Office has also routinely required citizens to waive any civil claims against police in order to receive a plea offer.

6.     In addition, once brought before the St. Louis City Municipal Court, protesters and activists must contend with a fine and fee structure that, as written, expressly benefits the prosecutors who bring such cases and judges who hear them, so long as a guilty plea is extracted or guilty verdict rendered. *See* St. Louis City Ordinance 3.08.240. Current local law also expects

2

defendants to pay money to the court even if they are acquitted. *See* St. Louis City Ordinances 3.08.370, 3.08.390, 3.08.392.

7.     For all these reasons, Plaintiff seeks declaratory and injunctive relief on behalf of himself and the class of similarly situated persons.

8.     Individually, Plaintiff also seeks punitive and monetary damages for their unlawful arrest and inhumane treatment by police who brutally and forcibly took them into custody during the Workhouse protest that took place on July 21, 2017.

## Jurisdiction and Venue

9.     This is a civil rights action arising under 42 U.S.C. § 1983, 28 U.S.C. § 2201, and the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution. Therefore, this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

10.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## Parties

11.     Plaintiff Nicholas Apperson ("Apperson" or "Plaintiff") is a 32-year-old resident of St. Louis City, graduate of Washington University, successful technology professional, and local home owner.[1] Mx. Apperson is also a concerned citizen who believes that community members deserve fairness and accountability from local law enforcement. Plaintiff frequently participates in public actions to demand greater respect for Black Lives by police, including recently joining with others publicly to decry the Stockley acquittal. Through film and other means Plaintiff has also sought to surface and document instances of police misconduct in the City of St.

---

[1]     Plaintiff Apperson uses the gender-neutral honorific "Mx." and pronoun "they."

Louis. Apperson represents themself as an individual and a Class of similarly situated people all subject to the City's arrest, detention, and cash bail requirements based on assembly and speech.

12.     City of St. Louis is an independent charter city in the state of Missouri required to uphold three separate branches of local government: the Mayor's Office executive branch, City Council legislative branch, and Municipal Court system. The City maintains numerous agencies including the St. Louis Metropolitan Police Department (SLMPD), City of St. Louis Law Department, and City of St. Louis Department of Corrections.

## Factual Background

13.     Nicholas Apperson has been arrested numerous times by SLMPD officers during peaceful demonstrations and other public actions calling for police accountability. Plaintiff has repeatedly been taken into custody in handcuffs, detained in local jails and holding cells, and then required to post money bail to secure freedom based on alleged civil ordinance violations, many brought under overbroad and unconstitutionally ambiguous City ordinances, for merely assembling or publicly expressing political views.

**Jason Stockley Verdict Demonstrations**

14.     This past week, Mx. Apperson participated in an action following the acquittal of Officer Jason Stockley where police officers threatened to arrest protesters if they did not obey confusing and arbitrary orders and deployed chemical weapons against protestors.  Beyond fearing for their safety, Plaintiff feared arrest, transport to the City's jail, payment of bail predicated on unconstitutional charges for release, and trial in a court system rife with conflicts of interests due to the court fee system.

4

**Workhouse Conditions of Confinement Rally**

15.    These fears stem from recent traumatic incidents where police have wrongly arrested Apperson previously and Plaintiff has had to contend with the unlawful prosecution and case processing practices of the City. For instance, on July 21, 2017, Nicholas Apperson was the first person arrested during demonstrations at the City's Workhouse.

16.    During that action, police appeared to target Apperson as a leader in the protest movement, and brutally wrestled Apperson to the ground causing bodily injuries as police violently placed on handcuffs. Apperson was thereafter taken into custody, held, and made to post an arbitrary sum of bail without ever seeing a judge.

**"Cop Watching" and Serving as a Legal Observer**

17.    On February 10, 2017, Plaintiff Apperson was also taken into custody by SLMPD officers following their efforts to exercise their First Amendment rights to inquire about and video-tape the actions of officers who pulled their guns on a citizen on a public street in front of a popular restaurant in the middle of the day.

18.    The City of St. Louis Law Department is now prosecuting Plaintiff under Section 15.10.010 of the City's Ordinance Code, for the civil violation of allegedly interfering with an officer and resisting arrest. Section 15.10.010 is a locally-enacted non-criminal violation.

19.    In fact, the St. Louis City Counselor's office has repeatedly declared publicly that the City's civil municipal matters do not expose defendants to the possibility of jail time or incarceration. Yet, police are still taking protesters like Plaintiff Apperson into custody, holding them at the City's police stations and jails, and forcing them to pay cash in order to secure their release, rather than being merely cited and released to appear in court.

20.     Moreover, despite the civil nature of the allegations lodged, intent to prosecute by information alone, strong community ties, and lack of danger to the community, Apperson was required by St. Louis City law enforcement officials to pay money to finally secure liberty. The amount taken from Plaintiff is not set forth in any law, was not individually ordered by a judge, and was in no way needed to ensure Plaintiff's return to court.

**MUNY Theater Black Lives Matter Action**

21.     On August 9, 2016, Plaintiff Apperson was similarly arrested at the MUNY Theater in Forest Park and charged with the civil violation of disturbing the peace under Section 15.46.030 of the City's Ordinance Code.  This was for allegedly being part of a demonstration during intermission at the theater that involved people singing racial justice hymns and carrying banners on the anniversary of the death of Mike Brown, another Black man killed in our community by a white police officer.

22.     On that occasion too, Plaintiff was made to post an arbitrary amount of bail to purchase their release, when police merely charged Plaintiff with civil disturbance.

**Overbroad, Outdated, and Unduly Vague Ordinance Charges**

23.     A statute "may be neither vague, overbroad, nor otherwise invalid as applied to the conduct charged against a particular defendant." *Coates v. City of Cincinnati*, 402 U.S. 611, 619 (1971). A plaintiff is "permitted to raise its vagueness or unconstitutional overbreadth as applied to others. And if the law is found deficient . . . . [it] in effect, is stricken down on its face." *Id*. at 20.

24.     Plaintiff Apperson has been charged under various St. Louis City Ordinances used against protesters and activists, many drafted decades ago. These provisions lack *mens rea*

elements, fail to provide specific notice of what conduct is prohibited, leave undue discretion in the hands of local police, chill protected activity, and work to criminalize speech and assembly.

25.     For instance, the City's general disturbing the peace Ordinance, Section 15.46.030, last amended in 1960, provides in relevant part that is unlawful for any person to: "disturb the peace of others by noisy, riotous or disorderly conduct, or by violent, tumultuous, offensive or obstreperous conduct or carriage, or by loud and unusual noises, or by unseemly, profane, obscene, indecent, lewd or offensive language, calculated to provoke a breach of the peace."

26.     Plaintiff Apperson was charged under Section 15.46.030 for their alleged actions on August 9, 2016. The term "unusual noises" is indefinite and ambiguous. What noises might be considered "unusual" are very much in the eye of the beholder, leaving it up to the arresting officer to determine whether, in their opinion, a violation has occurred. Similarly, whether or not conduct is "offensive" is a very subjective determination. These terms are not defined by the Ordinance.

27.     This Ordinance's vagueness not only fails to give defendants notice of what is required of them so they may act accordingly, it also allows for those enforcing the ordinance to do so in an arbitrary, discriminatory, or unfair way. Indeed, "[v]esting law enforcement officials with complete discretion to decide whether a violation has occurred is the hallmark of a vague regulation." *Clary v. City of Cape Girardeau*, 165 F. Supp. 3d 808, 822 (E.D. Mo. 2016) (citing *Kolender v. Lawson*, 461 U.S. 352 (1983)).

28.     Section 15.46.030 also lacks a guilty-state-of-mind element, meaning its opacity is greatly exacerbated and likely to ensnare otherwise innocent conduct. *See Lambert v. California*, 355 U.S. 225 (1957) (strict liability provision that sought to punish felons who failed to register their presence with the city violated due process notice requirements); *Colautti v. Franklin*, 439 U.S. 379, 395 (1979) (lack of guilty mind element exacerbated vagueness of law, rending it void

and stating lack of *scienter* requirement made statute little more than 'a trap for those who act in

good faith.'); Eugene Chesney, *Concept of Mens Rea in the Criminal Law*, 29 J. CRIM. L. &

CRIMINOLOGY 627 (1938-39) (noting the "guilty mind" requirement has been historically essential

to prosecution of citizen actions).

29.     Laws and ordinances that on their face threaten free expression also violate the

overbreadth doctrine. *See Thornhill v. Alabama*, 310 U.S. 88, 98 (1940) (the question is whether

the provision "sweeps within its ambit other activities that, in ordinary circumstances, constitute

an exercise of freedom of speech or of the press"); *see also* Peter Polous, *Chicago's Ban on Gang

Loitering: Making Sense of Vagueness and Overbreadth in Loitering Laws*, 83 CALIFORNIA L.

REV. 379, 392 (1995). Specifically, "the overbreadth doctrine permits the facial invalidation of

laws that inhibit the exercise of First Amendment rights if the impermissible applications of the

law are substantial when 'judged in relation to the statute's plainly legitimate sweep.'" *City of

Chicago v. Morales*, 527 U.S. 41, 34 (1999).

30.     Content-based restrictions on speech are only constitutional when confined to a few

categories, such as fighting words. *See, e.g., United States v. Alvarez*, 567 U.S. 709, 717 (2012)

(citing *United States v. Stevens*, 559 U.S. 460, 470 (2010)). The disturbing the peace Ordinance is

not limited in application to these exceptions to the First Amendment's broad protections. To the

contrary, the Ordinance restricts a substantial amount of protected First Amendment activity,

including speech which does not incite immediate violence and is not intended to provoke others

to violence. In fact, it appears the Ordinance is regularly being enforced in an effort to silence or

chill protestors and those who dare to dissent in the City of St. Louis.

31.     And even Missouri's adoption of a limiting "fighting words" requirement to the

peace disturbance statute in *City of St. Louis v. Tinker*, 542 S.W.2d 512, 519 (Mo. banc 1976),

which has yet to be properly codified, does not fully remedy the Ordinance's constitutional infirmities. The Ordinance, on its face and as applied, criminalizes speech without sufficiently limiting its application to the narrow exceptions to the First Amendment's broad protections.

32.     Section 15.10.010 of the City's Ordinance Code, under which Plaintiff Apperson was charged for this alleged conduct on February 10, 2017, suffers similar fatal vagueness and First Amendment problems.

33.     The provision indicates that it is unlawful to "hinder, obstruct, resist or otherwise interfere with any City officer in the discharge of his official duties; or attempt to prevent any such officer from arresting any person, or attempt to rescue from such officer any person in his custody." St. Louis City Ordinance, Section 15.10.010.

34.     This ordinance also lacks any *mens rea* element and, as a result, also allows for a finding of guilt based upon accidental or unintentional conduct.

35.     Additionally, it fails to define terms like "hinder" or "interfere," leaving citizens to guess at what conduct exactly is prohibited. Rather, police are left with discretion to decide what they believe rises to the level of a hindrance or interference, and arrest citizens based upon their own subjective assessment of what is unacceptable behavior. Such application of personal preferences to citizen conduct runs the risk of sweeping up innocent persons engaged in activity wholly protected under the First Amendment, like shouting at police or filming them.

**Municipal Court Prosecution Practices**

36.     Mx. Apperson now faces municipal charges under "no drop" prosecution policies against activists and protesters instituted by then Mayor Francis Slay and members of his administration, and that, upon information and belief, largely continues to this day. Thus, regardless of whether probable cause exists at the time of their arrest, the weight of the evidence

against Plaintiff, or the constitutionally protected nature of any alleged conduct on the day in question, the City Counselor's office has insisted upon their formal prosecution. Indeed, it is the procedure of the City Counselor's Office to file charges without even speaking to arresting officers, and months may go by before City prosecutors read all reports relating to charges already filed.

37.     Moreover, Apperson now stands accused in a Municipal Court system where, pursuant to St. Louis City ordinances and practices, both a city court judge's fee and city court counselor's fee is collected in every successful prosecution. Thus, the city's judges and prosecutors would stand to benefit directly from every guilty finding – including any delivered against Mx. Apperson. *See* St. Louis City Ordinance 3.08.240.

38.     And no matter the outcome of his case – even if acquitted – per our local ordinances, Plaintiff Apperson may be charged a money "surcharge" under a different set of St. Louis City ordinances merely for the pleasure of becoming a defendant in our Municipal Court system. *See* St. Louis City Ordinances 3.08.370, 3.08.390, 3.08.392.

39.     These overlapping unlawful features of St. Louis's City's Municipal Court system – including punitive treatment of protestors, "cop-watchers," and other activists – custodial arrest for mere civil law violations, use of vague and overbroad ordinance provisions, arbitrary demands for random amounts of unsecured money bail in such matters, and subsequent prosecution in a system whose actors directly benefit from increased case filings and guilty findings – render the process unconstitutional from start to finish.

40.     Thus, by and through their attorneys and on behalf of themself and all others similarly situated, Nicholas Apperson seeks in this civil action the vindication of their fundamental

rights, a declaration that the City's past and ongoing conduct is unlawful, and injunctive relief assuring that their rights and the rights of the other Class members will not continue to be violated.

<u>**Challenged Policies, Practices, and Provisions**</u>

41.     Defendants' treatment of Plaintiff are not isolated incidents but reflects a pervasive set of overlapping practices, policies, and customs that have negatively impacted Plaintiff and countless others who have peacefully protested in the City or dared to document police activities for the press or otherwise. These St. Louis City policies, practices, and customs of the Defendants include:

**a.      Differential Treatment for Activists, Protesters, and "Cop-Watchers"**

Demonstrating "zero tolerance" for activists who call for police reform, members of the SLMPD consistently arrest protestors, those who use their telephone or cameras to film law enforcement, and other citizens who confront police to demand information, transparency, or accountability – rather than citing and releasing them to return to court. Thus, these individuals are delivered to the custody of the City's Corrections Department and held on bail for prolonged periods of time.  Further, months ago the City of St. Louis, through the Mayor's Office, developed a strict "no-drop" prosecution policy against such individuals. Historically this has resulted in the City Counselor's Office proceeding with cases against such individuals regardless of the underlying merits of the charges or First Amendment considerations. On information and belief, the City Counselor's Office still maintains aggressive prosecution policies towards protestors, including using forms that require protesters to release the City from liability before receiving plea offers. This has promoted a culture lawlessness and impunity on the part of SLMPD

Officers who are led to believe that even illegal and unjustified actions against protesters and "cop-watchers" will be facilitated and upheld by their superiors, the City's Corrections Department, City Counselor's Office, and St. Louis City Municipal Court.

**b.       Civil Arrests in Violation of the Fourth Amendment's Crime Requirement**

But any time the St. Louis City Police Department takes someone into custody for allegedly violating the City's Municipal Code – whether they are a political activist or not – the St. Louis Metropolitan Police Department and its officers are violating the United States and Missouri Constitution. Under the Fourth Amendment to the United States Constitution and its Missouri analog, warrantless arrest is not permitted absent probable cause that a crime has been permitted. Yet the City's Police Department arrests countless individuals each year on charges of violating the City's Municipal Code provisions, which are merely civil in nature. While no warrant could ever be constitutionally issued by a judge for such non-crimes, countless individuals have been physically arrested and detained in the City of St. Louis on accusations of mere civil violation of law. This conduct has been facilitated and encouraged by the policies and practices of the Mayor's Office, the City's Correction's Department, the City Counselor's Office, and even the City's Municipal Courts by regularly lauding and supporting the arrest work of the City's police, actively prosecuting such arrests and/or blithely processing such civil law matters following custodial arrest without critique or correction.

c.      **Disregard of Presumption of Release and Cash Bail Abuses**

Those taken into custody on Municipal charges as a result of the policies and practices of the St. Louis Metropolitan Police Department - whether they are protesters or not – are also deprived of the state's presumption of release on recognizance. After arrest, these individuals are held so that cash money bail may be secured. In addition, the amount of money demanded from each such arrestee is wholly arbitrary. Indeed, the City Counselor's Office, Municipal Court Administrative Judge and Court Administrator have long been aware of this practice. And rather than critique or correct such lawless activity, these agents of the City facilitate and perpetuate the practice, including by processing such funds and seeking and/or culling Municipal Court fines and fees from such amounts.

d.      **Use of Outdated, Overbroad and Unduly Vague Municipal Ordinances**

The City of St. Louis has on its books a range of local laws that violate Fourteenth and First Amendment standards as they are void for vagueness and may be used to prohibit protected speech and assembly. And many of these provisions, drafted decades ago prior to the country's due process revolution and United States Supreme Court civil rights era cases protecting protest activity, are repeatedly used to chill and control the actions of activists, press members, and legal observers. In particular, Sections 15.46.030 (disturbing the peace) and 15.10.010 (interfering with an officer), all run afoul of constitutional requirements for notice and freedom of expression.

e.     **Municipal Court Bias, Financial Incentives, and Conflicts of Interest**

The City of St. Louis's Municipal Court system is also infected with conflicts of interest due to the inherent bias created by the City's fines and fees system. As a matter of local law, both the City Counselor's Office and the City's Municipal judges have an incentive to seek guilty findings in every case – regardless of the guilt or innocence of the accused – based upon ear-marked judge's, counselor's, and clerk's fees that will be collected in every case fully adjudicated. For every guilty finding, the City's Municipal judges are able to collect $4.75 as a "judge's fee" and the Counselor's office stands to benefit from a "city counselor's fee" of $3.75. Clerks also benefit from helping to see cases through to conviction by receiving a $2.50 "clerk's fee" for every case resulting in a guilty finding. On the other hand, even the innocent must pay for the privilege of prosecution in St. Louis City with a "surcharge" of $2.00 for any case that is formally filed but then dismissed. Through this set of policies and practices, the City of St. Louis has improperly collected untold amounts from defendants brought before the courts and will continue to do if not prevented from doing so.[2]

## Class Action Allegations

42.     Plaintiff brings this suit on their own behalf and on behalf of all persons who have been arrested, detained, made to post bail, mandatorily prosecuted or otherwise retaliated against by the City of St. Louis for protest or other public expressions of dissent. Separately, they represent the larger group of all people who have been, or will be in the future, arrested for civil infractions by the St. Louis Police Department, detained and made to post arbitrary sums of bail by police, or

---

[2]     The City of St. Louis has refused to respond to Sunshine requests for such records.

subjected to the City of St. Louis's biased Municipal Court system. The number of individuals comprising the class greatly exceeds 40. The class also includes an unknown and unknowable number of future class members.

43.     There are questions of law or fact common to the class including, but not limited to: (a) whether St. Louis City and its various agencies employs customs and practices that reflect intolerance and differential treatment for protest and "cop watching" activities, including "no drop" prosecution policies in violation of the First, Fourth and Fourteenth Amendments; (b) whether custodial arrest of non-violent demonstrators and those who film police conduct violates the First Amendment to the United States Constitution by chilling such protected conduct; (c) whether St. Louis City and its various agencies violate the Fourth Amendment by arresting persons for the non-crime of allegedly violating the City's civil Municipal Ordinances; (d) whether St. Louis City ordinances are void for vagueness or overly broad; (e) whether St. Louis City and its various agencies unlawfully demand cash money bail from Municipal Ordinance arrestees before giving them their freedom, regardless of the state's presumption of release on recognizance or individual circumstances of the arrestee in violation of the Fourth, Eighth, and Fourteenth Amendments; and (f) whether St. Louis City's policies create bias and conflicts of interest, violating the Fourteenth Amendment, given the incentives for Municipal Judges and City Counselors to seek guilty findings in order to have special judge's and counselor's fees assessed in Municipal Court cases.

44.     Because the policies, practices and customs challenged in this Complaint apply with equal force to the named Plaintiff and all other members of the class, the claims of the named Plaintiffs are typical of the class in general.

45.     The named Plaintiff and their counsel will fairly and adequately represent the interests of the class. The named Plaintiff possesses strong personal interests in the subject matter of the lawsuit and is represented by experienced counsel with expertise in civil rights litigation. Counsel have the legal knowledge and resources to fairly and adequately represent the interests of all class members in this action.

46.     The Defendants have acted or refused to act on grounds generally applicable to the class: their policies, procedures, practices, acts, and omissions have affected all class members. Accordingly, final injunctive and declaratory relief is appropriate to the class as a whole.

### Claims for Relief

### COUNT I
### (42 U.S.C. § 1983)
### First Amendment Claim for Retaliation for Speech and Dissent

47.     Plaintiff incorporates by reference paragraphs 1-46 as if fully set forth herein.

48.     The First Amendment of the United States Constitution guarantees Plaintiff's rights to assemble for political purposes and to speak out on matters of public concern without being retaliated against by government officials.

49.     Pursuant to the policies and practices described in this Complaint, Plaintiff was retaliated against for protesting and filming police actions by being arrested, jailed, and made to pay bail on charges of an alleged civil infraction.

### COUNT II
### (42 U.S.C. § 1983)
### Fourth Amendment Claim for Unlawful Custodial Arrest, Detention,
### and Imposition of Mandatory Bail Based Upon Alleged Non-Criminal Activity

50.     The Plaintiff incorporates by reference paragraphs 1-46 as if fully set forth herein.

Case: 4:17-cv-02461   Doc. #:  1   Filed: 09/22/17   Page: 17 of 20 PageID #: 17


51.     Pursuant to the policies and practices described in this Complaint, Plaintiff was arrested, imprisoned, and made to pay bail without probable cause that they committed any crime, in violation of the Fourth Amendment.

## COUNT III
### (42 U.S.C. § 1983)
### Eighth Amendment Claim for Imposition of Excessive Bail

52.     Plaintiff incorporates by reference the allegations in paragraphs 1-46 as if fully set forth herein.

53.     Pursuant to the policies and practices described in this Complaint, Plaintiff was forced by the Defendants to purchase their freedom by posting an arbitrarily set sum of cash bail established by police while awaiting trial on a non-criminal, civil ordinance charge in violation of the Eighth Amendment's Excessive Bail Clause.

## COUNT IV
### (42 U.S.C. § 1983)
### Fourteenth Amendment Claim for Due Process Violations and Biased Court

54.     Plaintiff incorporates by reference the allegations in paragraphs 1-46 as if fully set forth herein.

55.     Pursuant to the policies and practices described in this Complaint, Plaintiff's Due Process Rights under the Fourteenth Amendment the United States Constitution are violated by, among other things, the fine and fee system maintained in the St. Louis City Municipal Court which incentivizes guilty findings in light of the special fees for judge's, City Counselors and the Court's clerk that may be collected from defendants who are found guilty.

## COUNT V
### (State Law Claim)
### Missouri Constitutional Claim for Retaliation for Speech and Dissent

56.     Plaintiff incorporates by reference paragraphs 1-46 as if fully set forth herein.

57.     Missouri's Constitution, under Article One, Sections 8 and 9, guarantees Plaintiff's rights to assemble for political purposes and to speak out on matters of public concern without being retaliated against by government officials.

58.     Pursuant to the policies and practices described in this Complaint, Plaintiff was retaliated against for protesting and filming police actions by being arrested, jailed, and made to pay bail on charges of an alleged civil infraction.

### COUNT VI
### (State Law Claim)
### Missouri Constitutional and State Law Claim for Unlawful Custodial Arrest, Detention, and Imposition of Mandatory Bail Based Upon Alleged Non-Criminal Activity

59.     The Plaintiff incorporates by reference paragraphs 1-46 as if fully set forth herein.

60.     Pursuant to the policies and practices described in this Complaint, Plaintiff was arrested, imprisoned, and made to pay bail without probable cause that they committed any crime, in violation of Article One, Section 15 of the Missouri Constitution and Supreme Court Rules 37.15 and 37.43.

### COUNT VII
### (State Law Claim)
### Missouri Constitutional Claim for Excessive Bail

61.     Plaintiff incorporates by reference the allegations in paragraphs 1-46 as if fully set forth herein.

62.     Pursuant to the policies and practices described in this Complaint, Plaintiff was forced by the Defendants to purchase they freedom by posting an arbitrarily set sum of cash bail established by police while awaiting trial on a non-criminal, civil ordinance charge in violation of Sections 20 and 21 of Article One of the Missouri Constitution prohibiting the government from imposing bail unnecessarily.

## COUNT VIII
### (State Law Claim)
### Missouri Constitutional Law Claim for Due Process Violations and Biased Courts

63.     Plaintiff incorporates by reference the allegations in paragraphs 1-46 as if fully set forth herein.

64.     Pursuant to the policies and practices described in this Complaint, Plaintiff's Due Process Rights under the Article One, Section 10 of the Missouri Constitution are violated by, among other things, the fine and fee system maintained in the St. Louis City Municipal Court which incentivizes guilty findings in light of the special fees for judge's, City Counselors and the Court's clerk that may be collected from defendants who are found guilty.

### **Request for Relief**

WHEREFORE, Plaintiff and the other Class members request that this Court issue the following relief:

a.     A declaratory judgment providing that:

1.     St. Louis City violates constitutional and other legal rights by arresting, detaining, demanding bail, mandatorily prosecuting, or otherwise retaliating against individuals in connection with non-violent expressions of opinion and dissent;

2.     St. Louis City violates constitutional and other legal rights by arresting, detaining, or demanding bail in connection with non-criminal civil Municipal Ordinance violation allegations and instead should cite and release in such matters absent extraordinary circumstances;

3.     St. Louis City violates constitutional and other legal rights by maintaining unconstitutionally vague and overbroad City Ordinance provisions and using them as a basis to prosecute protesters and others;

4.     St. Louis City violates constitutional and other legal rights by imposing arbitrary sums of cash money that may be demanded from those arrested for non-criminal civil Municipal Ordinance violations before allowing for release pending trial;

5.     St. Louis City violates constitutional and other legal rights with its Municipal Court fine and fee structure that creates bias and conflicts of interest by incentivizing Municipal judges, City Counselors, and others to make findings of guilt in order to increase the number of fees from which they may directly benefit.

6.      St. Louis City violates constitutional and other legal rights with its Municipal Court fine and fee structure that allows for the collection of court fees from those whose cases have been dismissed.

b.      An order and judgment temporarily, preliminarily, and permanently enjoining Defendants from enforcing the previously described unconstitutional arrest, detention, cash bail, and special court fees policies and practices against the named Plaintiff and the Class of similarly situated people that he represents;

c.      Punitive and compensatory damages for the harms suffered as a result of his wrongful arrest and unconstitutional treatment on July 21, 2017.

d.      An order and judgment granting reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

e.      And any other relief this Court deems just and proper.


Dated: September 22, 2017

Respectfully submitted:


/s/ *Mae C. Quinn*
Mae C. Quinn, #61584

/s/ *Amy E. Breihan*
Amy E. Breihan, #65499MO

RODERICK AND SOLANGE MACARTHUR
JUSTICE CENTER AT ST. LOUIS
3115 South Grand Blvd., Suite 300
St. Louis, MO 63118
Telephone: (314) 254-8540
Facsimile: (314) 254-8547
mae.quinn@macarthurjustice.org
amy.breihan@macarthurjustice.org